M. C. SULLIVAN AND OTHERS, APPELLANTS, *v.* THE NORTHERN SPY MINING CO., RESPONDENT.

1. WATER RIGHTS.—APPROPRIATION.—NATURAL SOURCE OF SUPPLY.
—PUBLIC LANDS.—SEMBLE.—Rev. Stat. U. S. § 2339 provides
that whenever by priority of possession rights to the use of
water for mining, agricultural, manufacturing or other pur-
poses, have vested and the same are recognized and acknowl-
edged by the local custom laws and the decisions of courts,
the possessors and owners of such vested rights shall be main-
tained and protected in the same. Id. § 2340 provides that all
patents granted shall be subject to any vested or accrued water
rights or rights to ditches and reservoirs used in connection
with such water rights as may have been acquired under the
preceding section.   2 Comp. Laws 1888, § 2780, provides that
"a right to the use of water for any useful purpose such as
for domestic purposes, irrigating lands,  *  *  *  is hereby
recognized and acknowledged to have vested and acquired.
*  *  *  under any of the following circumstances: 1. When-
ever any person or persons shall have taken, diverted and used
any of the unappropriated water of any natural stream, water-
course, lake or spring, or other natural source of supply." *Held,*
that the discoverer of percolating waters on public lands by
digging a well for the purpose of collecting same for use ac-
quires an easement in the land for the maintenance of his well
and the right to the water as an appropriator thereof from a
"natural source of supply" as against a subsequent locator
of the land on which the well is situated, and *semble,* that the
right of one who discovers and appropriates percolating waters
on public lands by digging a well to collect the water is sub-
ject to the right of the owner of the land, who located it sub-
sequently, to sink a well adjacent, though it dry up the one
first located.

(No. 581.   Decided June 17, 1895.   40 P. R. 709.)

APPEAL from the District Court of the Third Judicial
District.   Hon. George W. Bartch, *Judge.*

Action by M. C. Sullivan and others against the North-

ern Spy Mining Company. From a judgment for defendant, plaintiffs appeal. *Affirmed.*

*Messrs. Powers & Straup,* for appellants.

It was clearly error to admit in evidence the deed from Henry Barney to the Northern Spy Mining Company, dated July 12, 1890, for there was no testimony tending to show that Barney had any claim to any land embraced in the deed. Barney only had a license to use the water in consideration of his making some repairs on the well. A licensee has the right to do any act which is necessary to the full enjoyment of the license, but the terms of the license must be strictly followed and cannot be extended or varied. *Luford* v. *Putnam,* 35 N. H. 563; *Dempsey* v. *Kipp,* 62 Barb. (N. Y.) 311. The license or privilege to use the water was given to Mr. Barney personally, and it has been repeatedly held that a license is strictly confined to the original parties. It is purely a personal privilege, and, unless coupled with an interest is not assignable, and can operate neither for nor against a third person. *Jackson* v. *Babcock,* 4 Johns. (N. Y.) 418; *DeHaro* v. *U. S.,* 5 Wall. (U. S.) 599; *Paine* v. *Northern Pac. R. Co.,* 14 Fed. Rep. 407; 13 Am. & Eng. Enc. of Law, 545. A well is " an artificial excavation and erection in and upon land, which necessarily includes and comprehends the substantial occupation and beneficial enjoyment of the whole premises on which it is situated." Anderson's Law Dictionary, " Well;" Bouv. Law Dictionary, " Well;" *Johnson* v. *Rayner,* 6 Gray, 110; *Mixer* v. *Reed,* 25 Vt. 257.

The common law in regard to the use of water from wells is still in force in this territory, and water therefrom is not subject to appropriation like the water from "natural streams, water courses, lakes, or springs." The

distinction between a well and a natural source of supply of water is clearly pointed out by Tindal, C. J., in *Action* v. *Blundell*, 12 M. & W. 350.    See, also, *Roath* v. *Driscoll*, 20 Conn. 541; *Wheatley* v. *Baugh*, 25 Pa. St. 528; *Haleman* v. *Bruckhardt*, 45 Penn. 518.    See, also, " Rights in Subterranean Waters," 2 Amer. Law Reg. N. S. 65. Water filtrating or percolating in the soil belongs to the owner of the freehold, like the rocks and minerals found there.    It exists there free from the usufructuary rights of others.    *Hanson* v. *McCue*, 42 Cal. 303; *Harwood* v. *Benton*, 32 Vt. 737; *Cross* v. *Kitts*, 69 Cal. 222.    Where there is nothing to show that the waters of a spring or well are supplied by any defined flowing stream, the presumption will be that they have their source in the ordinary percolations of water through the soil.    Percolating waters, and those whose sources are unknown, belong to the realty in which it is found.    Kinney on Irrigation, § 49; *Wheatley* v. *Baugh*, 64 Am. Dec. 727, note; *Mosier* v. *Caldwell*, 7 Nev. 363; *Trustees of Delhi* v. *Youmans,* 50 Barb. (N. Y.) 316; *Taylor* v. *Welch*, 6 Or. 199.    The law controlling the rights to subterranean waters not running through a channel or defined course is very different from that affecting the rights of surface streams.    In the former case the water belongs to the soil, is part of it, is owned and possessed as the earth is, and may be used, removed, and controlled to the same extent by the owner; and no action will lie for injuries caused by cutting it off.    Kinney on Irrigation, § 298; *Southern Pac. R. R. Co.* v. *Dufour*, 95 Cal. 615.    In general, appropriators of water have followed the forms used to locate and hold mineral claims.    It is also customary to record the notices in some official records.    *Osgood* v. *Eldorado W. Co.*, 56 Cal. 571; *Kimball* v. *Gearhart*, 12 Cal. 27; Kinney on Irrigation, § 157.

*Messrs. Marshall & Royle*, for respondent.

SMITH, J.:

The main question in this case, and the only one, in fact, which we deem it necessary to consider, is, can the discoverer of a flow of percolating waters on the public lands, by digging wells and improving the same and constantly using the water for a beneficial purpose, acquire a right to take water from such wells as against an owner of the land on which the well is located, where the owner of the land acquired title by a location made subsequent to the digging of the wells? Many other questions are raised on this appeal, but their materiality all depends on the answer to the question just stated. If this question is answered in the affirmative, the judgment must be affirmed; if answered in the negative, it must be reversed; so we do not deem it necessary to examine the other questions presented.

We are not aware of any case having been decided in these arid regions, in which this precise question has been passed upon. The doctrine may be said to be settled that the owner of lands has a right to dig thereon, and to appropriate and use percolating waters therein, although by so doing he may dry up the wells or spring of an adjacent proprietor. See *Hanson* v. *McCue,* 42 Cal. 303; Kinney, Irr. §§ 49, 298; *Railroad Co.* v. *Dufour,* 95 Cal. 615, 30 Pac. 783. But this rule does not determine the case at bar. The facts here, so far as necessary to be stated, are: The plaintiffs are the owners of a mining claim in Tintic mining district, located in 1889. When this claim was located there was a well dug in the ground, and one Barney had a house at or near this well, and was engaged in hauling water from the well to the defendant. The defendant continued to procure water from the well, and plaintiffs bring this suit to recover damages, alleging trespass.

The undisputed facts are that the predecessors in inter-

est of Barney and the defendant, in about 1870, discovered evidences of percolating waters at the point where the well was dug, and by digging a hole about three feet deep procured a supply of water. These discoverers were miners, and were working a mine, part of which, at least, the defendant now owns. It seems that this hole or well, if it may be called such, was so shallow that cattle and horses on the range came to it and trod down its banks, so that the discoverers arranged with one Barney that if he would repair the well, wall it up, and protect it, he might use water therefrom. Barney did this, and put in a pump. For about 20 years it remained in this condition. The well, being in the midst of a desert, was used as a source of water supply for several mines in the neighborhood, and was all the time on public lands of the United States. In 1889 the plaintiffs located the ground, including the well and Barney's house as a mining claim. In 1890 Barney conveyed whatever right he had in the premises to the defendant, and it continued to procure water from the well. The well is shown to be from 10 to 15 feet deep, and to furnish a very abundant supply of water. The question is, has the defendant an easement in plaintiff's land to continue to take water from the well constructed by its predecessors? The federal government, as proprietor of the public lands, early recognized the necessity of permitting persons in this arid region to acquire an interest in water sources on the public lands distinct from the lands themselves. It had always been the settled law that the owner of land was likewise the owner of all waters situate thereon or percolating therein. This may be said to have been the universal rule in the United States, prior to the settlement of California. Local decisions, arising from the necessities of the people, soon altered it there, and in 1866 Congress passed an act (14 Stat. 253; Rev. St. § 2339), which provided, among other things, as

follows: "Whenever by priority of possession, rights to the use of water for mining, agricultural, manufacturing or other purposes, have vested and accrued, and the same are recognized and acknowledged by the local customs, laws and decisions of courts, the possessors and owners of such vested rights shall be maintained and protected in the same." By the act of July 9, 1870 (16 Stat. 218; Rev. St. § 2340) it was further provided: "All patents granted, or preemption, or homesteads allowed, shall be subject to any vested and accrued water right, or rights to ditches and reservoirs used in connection with such water rights as may have been acquired under or recognized by the preceding section."

The question is, then, is the right of defendant to use water, under the facts stated, one that is recognized by the local customs and laws? Section 2780, Comp. Laws Utah, provides: "A right to the use of water for any useful purpose, such as domestic purposes, irrigating lands, propelling machinery, washing or sluicing ores and other like purposes is hereby recognized and acknowledged to have vested and accrued as a primary right to the extent of and reasonable necessity for such use thereof under any of the following circumstances: First, whenever any person or persons shall have taken, diverted and used any of the unappropriated water of any natural stream, water course, lake or spring or other natural source of supply." We think it would be a very strained construction to hold that a hole dug three feet deep, into which the waters naturally gathered was not a natural source of supply, while it is conceded if the water came to the surface and flowed along a few feet, and was then collected in a like hole, it would be a natural source of supply. We are inclined to give these statutes a much broader construction. In our opinion, wherever the industry of the pioneer has appropriated a source of water, either on the surface of

·or under the public lands, he and his successors acquire an easement and right to take and use such water to the ·extent indicated by the original appropriation, and that a private owner who subsequently acquires the land takes it burdened with this easement, and we also hold that this easement carries with it such rights of ingress and egress as are necessary to its proper enjoyment. This right of an appropriator is, of course, subject to the rule of law which will permit the owner to sink an adjoining well on his own premises ·although he should thereby dry up that of the first appropriator. The determination of this question disposes of ·the whole case, and it is therefore ordered that the judgment be, and it is, affirmed.

MERRITT, C. J., and KING, J., concur.