## PETERSON v. EUREKA HILL MINING CO.

No. 3256. Decided Dec. 10, 1918. (176 Pac. 729.)

1. APPEAL AND ERROR—REVIEW—PRESUMPTIONS—OPENING DEFAULT. Where the evidence on the opening of a default by a defendant in a civil action is not before the reviewing court, it will be presumed to have been sufficient to justify the trial court's action. (Page 72.)

2. WATERS AND WATER COURSES—WATERS ON PUBLIC DOMAIN—APPROPRIATION. The waters of a spring located on the public domain are subject to appropriation by private parties for beneficial uses. (Page 75.)

3. WATERS AND WATER COURSES—APPROPRIATION OF WATER—TITLE. Where a mining company has appropriated the waters of a spring located on the public domain and has subsequently acquired title to the premises, another cannot over the owner's protest acquire any rights to such waters by making application to the state engineer's office.[1] (Page 75.)

Appeal from the District Court of Juab County, Fifth District; *Hon. D. H. Morris,* Judge.

Action by Alma Peterson against the Eureka Hill Mining Company.

Judgment for defendant was entered after opening a default by him. Plaintiff appeals.

[1]*Willow Creek Irrigation Co.* v. *Michaelson,* 21 Utah, 248, 60 Pac. 943, 51 L. R. A. 280, 81 Am. St. Rep. 687.

AFFIRMED.

*George A. Udall,* for appellant.

*VanCott, Riter & Farnsworth* for respondent.

## RESPONDENT'S POINTS.

The uncontradicted evidence shows that the springs in question are located upon private ground belonging to the defendant, and form no part of a running or public stream. Under all the authorities they are not subject to appropriation. *Crescent N. Co.* v. *Silver, etc., Co.,* 17 Utah, 444; *Willow Creek* v. *Michaelson,* 21 Utah 248; *Garns* v. *Rollins,* 41 Utah, 260; *Roberts* v. *Gribble,* 43 Utah, 411; *White* v. *Rose, etc.,* 157 Pac. [Colo.] 1164; 2 Kinney on Irrigation, p. 1135; *Shenandoah* v. *Morgan,* 106 Cal. 409; *Churchill* v. *Rose,* 136 Cal. 576; *Vanderwork* v. *Hewes,* 110 Pac. [New Mexico] 567; *Mason* v. *Yearwood,* 108 Pac. [Wash.] 608; *Ryan* v. *Quinlan,* 124 Pac. [Mont.] 512. Furthermore, the plaintiff could not divert the waters of these springs onto his own ground, without committing a deliberate trespass on the defendant's ground either by digging a ditch or running a pipe line; and before he can acquire such a right he must establish a twenty years' adverse user. *Holden* v. *Davis,* 41 Utah, 200; *Lund* v. *Wilcox,* 34 Utah, 205; *Coleman* v. *Hines,* 24 Utah, 360; *Funk* v. *Anderson,* 22 Utah, 238.

FRICK, C. J.

This action was commenced pursuant to Comp. Laws 1907, section 1288x14, as amended by Laws Utah 1911, p. 2, to determine the right to the waters of a certain spring for which plaintiff made application with the state engineer as required by our statute, and which application the state engineer rejected upon the protest of the defendant. Plaintiff therefore brought this action, and alleged that he is entitled to the waters of said spring, and prayed judgment that he be adjudged to be the owner thereof, and that the defendant be

enjoined from using the waters flowing therefrom and from interfering with plaintiff's use thereof.

It appears that the defendant failed to answer the complaint, and default was duly entered against it, and subsequently a judgment was entered in favor of the plaintiff. After judgment had been entered the defendant filed a motion asking that its default be set aside, and that the judgment be vacated, and that it be permitted to answer the complaint. The motion was supported by affidavits and perhaps other evidence; the record not being very clear on that point. The court, after a hearing, granted the motion, set aside the default, and vacated the judgment, and granted the defendant leave to answer the complaint, which it did.

The defendant in its answer denied plaintiff's right to the waters of the spring in question, and set up its rights to the waters flowing therefrom. A subsequent trial resulted in findings of facts and conclusions of law in favor of the defendant, and judgment was entered accordingly, from which plaintiff appeals.

The record in this case is fragmentary and incomplete, and the printed abstract fails to comply with the rules of the court to such an extent that we have found much difficulty to sustain this appeal. We have concluded, however, to overlook the many defects and imperfections of the record, and to dispose of the appeal upon its merits.

It is contended that the court erred in vacating defendant's default and in setting aside the judgment entered by default and in granting defendant leave to answer and contest the complaint. It is quite clear from the record that the motion to vacate the default and to set aside the judgment was supported by affidavits and perhaps other evidence. Those affidavits are, however, not made a part of the bill of exceptions, and nothing is certified up by the trial judge except the evidence that was produced and the proceedings that were had at the trial. The question, therefore, of whether the evidence produced in support of the motion to vacate the default of the defendant and to set aside the default judgment was sufficient to authorize the trial court to do so not being before us, we must presume that the evidence

was sufficient to justify the court's action. Moreover, the question presented was one which was within the sound discretion of the trial court, and counsel for plaintiff has not pointed out anything from which we can say that the court abused its discretion in setting aside the default and the judgment entered thereon. This assignment therefore cannot prevail.

It is next contended that the findings of fact, conclusions of law, and judgment are erroneous, and that the findings are not supported by the evidence, and that the conclusions and judgment are contrary to law. Here we are again met with such meager assignments respecting the particulars in which the evidence is claimed to be insufficient to sustain the findings that, in view of the state and condition of the record, it is almost impossible for us to follow appellant's counsel in his contentions. After again disregarding the imperfections of the assignments, however, and upon going into the record, we are convinced that no prejudicial error was committed by the court. The findings of fact go into great detail and cover every phase of the case. They are not set forth in the printed abstract, not even in condensed form; hence we have been compelled to have recourse to the original transcript to determine what the findings are. The findings that we deem material are, in substance, as follows:

"That in the year 1881 there was a natural spring of water upon vacant government land, which spring was within the exterior boundaries of what subsequently was located and known as the Climax placer mining claim; that said spring was known as Iron spring or Foothill spring, and is the one in question here; that the water flowing therefrom flowed a distance of about 150 feet to a natural depression in the ground where it formed a small pool about ten feet in diameter and about one foot in depth; that at all times mentioned in the findings the defendant was a corporation of the state of Utah and the owner of a mine and mining ground situate in Eureka, Juab County, Utah, a little more than a mile distant from said spring; that the defendant was engaged in mining ores from said mine and in extracting the minerals therefrom; that about the year 1881 the de-

fendant appropriated all of the water flowing from said
spring by building a pipe line running therefrom and con-
ducting the water therefrom through said pipe line to its
mine, where it used the same for making steam by means of
which it operated its mining machinery used at said mine,
and also used said water for culinary and other purposes;
that about the year 1885, for the purpose of augmenting the
flow of water from said spring, the defendant dug a tunnel
from said spring into the mountain a distance of nearly 200
feet, and that by means of said tunnel the flow of water from
said spring was largely increased, and all the water flowing
from said tunnel, together with the water flowing from the
spring, was collected and conducted into said pipe line,
through which it was carried to defendant's mine, where it
was used for the purposes before stated; that the defendant
continued to divert the water from said spring for the uses
and purposes aforesaid until the year. 1894, in which year
defendant constructed a mill on its mining ground for the
purpose of milling and treating ores from its mine; that said
mill was temporarily closed down after the year 1899, but the
defendant continued the use of said water as before stated;
that the quantity of water flowing from said spring and used
by the defendant varied in different seasons of the year rang-
ing from one-half gallon to eight gallons per minute; that
about the year 1899 or 1900 a freshet caused said pipe line
to break, and the water was not thereafter conducted through
the same to defendant's mine; that thereafter, during the
years 1901 and 1902, the defendant leased said water to other
persons for a cash rental, and that during each year thereafter
up to and including 1912 other persons, by the consent and
permission of the defendant, used said water for beneficial
purposes; that in December, 1900, the Climax placer mining
claim was located by two citizens of the United States who
shortly thereafter conveyed the same to the defendant, who
afterwards, upon due application therefor, to-wit, in June,
1904, obtained a mineral patent from the United States gov-
ernment for said mining claim, and it ever since has been,
and still is, the owner thereof; that the water from said
spring arises, and the tunnel aforesaid is located, wholly upon

the mining claim owned by defendant, and that when plaintiff first began using the water from said spring the ground upon which it arises had ceased to be a part of the public domain, but that the title to said land was vested in the defendant; that the waters of said spring do not and never have formed a natural stream flowing either on or under the surface of the ground, but said spring is caused and fed solely from percolating waters within the exterior boundaries of said mining claim owned by defendant as before stated; that the defendant, ever since the year 1881, has always claimed to be the owner of all of the waters flowing from said spring, and has used it for the purposes aforesaid, and it did not cease to use said water at any time for a period of seven years, and has never abandoned, nor intended to abandon, the same.''

The court then proceeds to find the facts concerning plaintiff's claims to said water and with respect to the making of his application therefor in September, 1912, the rejection of his claim by the state engineer, and the institution of this action as stated at the beginning of this opinion. The court specially finds that the plaintiff has no right to said water nor to any part thereof either by reason of his application to the state engineer's office or otherwise.

The court made conclusions of law in harmony with the foregoing findings, and entered a decree in favor of the defendant in accordance with the conclusions of law.

We could subserve the interests of no one in attempting to set forth the evidence, not even in substance. It must suffice to say that the evidence amply sustains the court's findings, and the conclusions of law clearly support the judgment. Under the facts as found, and which, for the 2, 3 purposes of this decision, must be taken as true, the defendant appropriated the waters of the spring in question and applied them to a beneficial use while the soil upon which the spring was located was still a part of the public domain. This it had a legal right to do. 2 Kinney, Irrigation, etc. (2d Ed.) section 648. If it were assumed, however, that defendant's right and title to said water were not in all respects invulnerable as against all the world, yet, so

far as plaintiff is concerned, he cannot assail defendant's title, for the reason that according to his own statements when his application to appropriate the water from said spring was made the land upon which the spring is located had ceased to be public domain for a period of more than eight years, and the title thereto during all of said time was vested in the defendant. Under such circumstances the plaintiff could not, over the protest of the defendant, acquire any right to the waters in said spring at the time he made application therefor in the state engineer's office. Referring again to Mr. Kinney's excellent work on Irrigation, and to the particular section cited, the author, in discussing the subject, says:

"* * * The waters from springs arising upon lands that have been segregated from the public domain and the title thereto has passed into private ownership cannot be appropriated by a person other than the owner of the land unless the water from the springs should flow below the tract of land whereon the same are located."

A number of cases are cited in support of the text, among which number is the case of *Willow Creek Irrigation Co.* v. *Michaelson*, 21 Utah, 248, 60 Pac. 943, 51 L. R. A. 280, 81 Am. St. Rep. 687, where it is so held. It is clear, therefore, that quite apart from the defendant's claim respecting its appropriation and use, of the waters from the spring during the many years before stated, plaintiff's claim to said water, according to his own statements, cannot prevail, since it dates only from September, 1912, at which time the title to the land on which the spring is located had long since passed into private ownership.

Nor can plaintiff prevail upon the claim that the waters flowing from the spring pass beyond the boundaries of defendant's mine, since the facts in that respect are clearly against him.

Plaintiff's claim, therefore, is supported by neither the law nor the facts, and hence the judgment of the district court must prevail.

The judgment is affirmed, with costs to defendant.

McCARTY, CORFMAN, THURMAN, and GIDEON, JJ., concur.