FRICK, WEBER, GIDEON, and THURMAN, JJ., concur.

---

. STOOKEY v. GREEN.

No. 2982. Decided Jan. 27, 1919. (178 Pac. 586.)

1. APPEAL AND ERROR—REMAND. On appeal from a judgment for defendant in an action wherein plaintiff claimed title to the waters of a spring, *held*, that the case should be remanded for new trial, where the record was insufficient to furnish basis for an intelligent decision by the Supreme Court, and one of the judges of that tribunal died, after submission, it appearing that respondent probably because of the death of his counsel was not represented when the case was reset for further argument. (Page 315.)

2. COURTS—PRECEDENT—BINDING PRECEDENT. Former decisions of the Supreme Court until overruled and modified are binding upon the court, and cannot be ignored. (Page 317.)

3. WATERS AND WATER COURSES—APPROPRIATION—SUBSEQUENT PATENT. A person appropriating water on the public domain by means of a well sunk in the ground is entitled to use the same as against a subsequent patentee of the land, and that, too, where it is water percolating into the well as contradistinguished from water flowing in well-defined channels.[1] (Page 319.)

4. WATERS AND WATER COURSES—APPROPRIATION—WATER SUBJECT. The run-off, waste, and seepage from irrigation are not subject to appropriation as against the owner of the land irrigated, who desires to recapture the water and apply it on his own land.[2] (Page 319.)

Appeal from the District Court of Tooele County, Third District; *Hon. T. D. Lewis,* Judge.

Action by Walter M. Stookey against Charles J. Green.

Judgment for defendant. Plaintiff appeals.

REMANDED with leave to amend pleadings.

*Evans, Evans & Folland* for appellant.

*L. L. Baker* for respondent.

THURMAN, J.

Plaintiff claims title to the waters of a certain spring in Tooele County. He alleges that said water has been used, in connection with other water, for the irrigation of about 15 acres of land, and for other beneficial purposes; that said land

---

[1] *Sullivan* v. *Mining Co.,* 11 Utah, 438, 40 Pac. 709, 30 L. R. A. 186; *Crescent Mining Co.* v. *Silver King Mining Co.,* 17 Utah, 444, 54 Pac. 244, 70 Am. St. Rep. 810; *Willow Creek Irr. Co.* v. *Michaelson,* 21 Utah, 248, 60 Pac. 943, 51 L. R. A. 280, 81 Am. St. Rep. 687; *Peterson* v. *Eureka Hill M. Co.,* 53 Utah, 70, 176 Pac. 729.

[2] *Garnes* v. *Rollins,* 41 Utah, 260, 125 Pac. 867, Ann. Cas. 1915C, 1159; *Roberts* v. *Gribble,* 43 Utah, 411, 134 Pac. 1014.

requires artificial irrigation to produce crops; that he and his predecessors in interest collected said waters by artificial water courses constructed by them, and conveyed them into a reservoir, where they were distributed for the purposes aforesaid; that the flow of the water when not interfered with is approximately 15 gallons per minute; that plaintiff and his predecessors in interest for more than 30 years have used the water adversely until his right to do so was challenged by the defendant in June, 1914; that the springs are natural springs, and the underground channels conveying the water thereto are well defined, and extend a considerable distance westwardly from said springs; that the slope of the land is such as to cause the springs to be the natural outlet of the water leading thereto; that in June, 1914, defendant commenced the excavation of a trench to the northward and westward of said springs and in near proximity thereto, and extended the same across the area including the channels and feeders of said springs; that as a result said channels and feeders were cut off and the water of the springs caused to flow in said trench; that the design of defendant, as plaintiff believes, is to deprive plaintiff of the use of said water and convey it to the premises of defendant; that after said trench was constructed plaintiff's said springs became and remained completely dry, and plaintiff was wholly deprived of said water to his damage in the sum of $2,000.

In a second cause of action plaintiff alleges substantially the same facts, and in addition thereto that all of said water is necessary for the beneficial purposes aforesaid, and that a further extension of said trench would totally destroy said springs, deprive plaintiff of the use thereof, and the injury to him would be irreparable by action at law for damages. Plaintiff prays for injunctive relief.

Defendant, answering, admits that artificial irrigation of plaintiff's land is necessary to produce crops, but denies the remaining allegations. Defendant affirmatively alleges that the water in question is percolating water, having no definite course or direction; admits that he constructed the trench complained of, but alleges that it was constructed by him upon the land of O. A. Johnson, and extended across land owned

by Richard N. Bush, and that said trench was constructed with their consent and for the purpose of gathering percolating waters to be conveyed by defendant to his own land for culinary and domestic purposes. Defendant prays that plaintiff take nothing by this action, and that he be allowed his costs.

The trial court found the issues in favor of the defendant, and judgment was entered accordingly. · Plaintiff appeals and assigns as error certain findings of the court. The findings challenged are as follows:

(3) "That there is no spring of water in the lane or highway west of plaintiff's land, the water arising there being water which percolates through the soil of the Johnson and Bush properties in a most diffused manner, with no defined channels or courses; that such water came partly from the irrigation of the Johnson and Bush lands above said lane, and partly from the melting of snow and rains during the spring or wet season; that the water arising in said lane came from the water that was either applied to or fell upon the land in close proximity to said lane, and did not come from melting snow in distant canyons."

(4) "That neither the plaintiff nor his predecessors in interest made an appropriation of nor put to a beneficial use any water arising in said lane or highway; that said water, for more than ten years past, had been permitted to remain where it arose to the surface, with no systematic effort to gather or control same by any one; that during said period said water, having been permitted to so remain and settle in said lane, rendered the road at such point frequently impassable, and that by reason of said water so rising to the surface and spreading over the highway rendered it necessary to constantly repair said highway to render it passable; that said waste water would naturally drain in an easterly direction and toward and upon plaintiff's property, and if any of such water did reach plaintiff's land it was by reason of the natural lay of the land and not by reason of any diverting works constructed by plaintiff or his predecessors in interest."

(6) "That any water so intercepted and collected by the defendant was water percolating from and seeping through the Johnson and Bush land, with no defined channels or courses, and was a part of the land in which it was found, and was intercepted, collected. and conveyed from said land with the consent of the owners thereof."

This case was argued and submitted during the May term of 1917. The case was assigned in regular order and an opinion written and considered by the members of the court during the same term. The opinion as written did not meet the approval of all the members of the court, and even the writer of the opinion was not fully satisfied with his own work, as the difficulties were inherent in the record. For the same reason, no other member of the court was able to write a more satisfactory opinion than the one presented. This condition continued until the February term of 1918, when by common consent the case was again placed on the calendar and submitted for further argument. It was hoped that another hearing would develop new light and possibly clear up deficiencies in the record. The attorneys for the respective parties were duly notified of the resetting of the case, but for some reason failed to appear. Whether the failure was due to the fact that approximately only 15 gallons of water per minute were involved or whether the parties were fully satisfied with their former presentation of the case we are not informed. The case was of necessity resubmitted on the original briefs, and the court thereby failed to obtain the new light so earnestly desired. It was again duly assigned, and, possibly for the reasons heretofore mentioned, no opinion on the last assignment was ever written. On account of the recent death of our Associate, Mr. Justice McCarty and the appearance on the bench of a new member to whom the case had never been presented, it became necessary to again reset the case for further argument during the present term. Appellant's counsel appeared, but respondent was not represented, possibly owing to the death of his attorney, which has occurred since the case was first submitted. Both in justice to the respondent, who, as stated, was not represented, and because of the deficiencies in the record, to which

we have referred, we are of the opinion that the case should be remanded to the trial court for further proceedings. Before making the order, however, it becomes necessary to briefly refer to the principal defects in the record and the difficulty with which the court has been confronted in attempting to arrive at a satisfactory conclusion.

It is manifest from the pleadings, the evidence, and the findings that the court, as well as the parties litigant, considered the principal issue to be whether or not the water reached the springs through subterranean channels, well defined, coming from a remote distance, or whether it came from percolations in adjacent land, caused by irrigation and precipitation upon said lands, and other lands in the vicinity. In this connection, we call attention to the fact that there is nothing in the record to show when any of these lands were reduced to private ownership, whether before or since the so-called appropriation by plaintiff or his predecessor in interest. This fact is vitally material, for, up to this time at least, it has never been held by this court that water can be appropriated from private lands. In fact the decisions are all the other way wherever the question has been directly presented. Cases will be cited before concluding these remarks.

The record is also defective in not showing the ownership of the land in the highway where the spring has its outlet—whether it is in the public or in the owner of the adjacent land on the west does not appear. The record is also defective in not showing the source of the water used in irrigating the adjacent lands on the west, whether it is a river, creek, stream, or private reservoir, or whether the lands irrigated belong to an irrigation system from which many persons use water, or whether it is isolated and entirely independent of any system in which others are interested. It is also defective in not showing whether the water in dispute would, if not obstructed, find its way back into the stream or source from which the adjacent lands on the west obtain their water for irrigation.

Some of these facts may not be absolutely essential to a decision of the case, but as the case is to be remanded for further proceedings we suggest that all of them may be ma-

terial, while some of them, in our judgment, are indispensable. We have tried to state the facts wherein the    2, 3
record is deficient in the order of their importance as
the same appear to us. While it is not our purpose in these
remarks to undertake to state what the law should be or
may hereafter be declared to be, it is our purpose to state what
the law now is as declared by this court in former decisions
bearing upon these questions. Until these decisions have been
overruled or modified they are binding upon the court, and
cannot be ignored or passed lightly by.

In *Sullivan* v. *Mining Co.*, 11 Utah, 438, 40 Pac. 709, 30 L.
R. A. 186, this court, in a remarkably clear opinion, held that
a person appropriating water on the public domain by means
of a well sunk in the ground is entitled to use the same as
against a subsequent patentee of the land, and that, too, where
it is water percolating into the well as contradistinguished
from water flowing in well-defined channels. The opinion
quotes the law of Congress recognizing the right to appropriate water on the public domain, and the law of Utah, then
a territory, declaring the conditions under which appropriation would be considered as a vested right. This case has
never been overruled or modified by any subsequent decision,
but because of certain dictum contained in the opinion itself,
after the court had clearly and succinctly declared the law of
the case, the real meaning of the opinion has been distorted
and misapplied by the casual reader. The dictum referred
to occurs on page 444 of 11 Utah, on page 710 of 40 Pac.
(30 L. R. A. 186), and reads as follows:

"This right of an appropriator is, of course, subject to the rule of
law which will permit the owner to sink an adjoining well on his own
premises, although he should thereby dry up that of the first appropriator."

The laws of Congress and of the Territory of Utah above
referred to are the laws under which the plaintiff in this
case must have appropriated the water in question if, in a
legal sense, he has appropriated it at all.

In *Crescent Mining Co.* v. *Silver King Mining Co.*, 17 Utah,
444, at page 456, 54 Pac. 244, 70 Am. St. Rep. 810, the court
expressly refers to *Sullivan* v. *Mining Co.*, supra, and ap-

proves of the doctrine therein announced, but, unfortunately, as other courts have done, treats the language above quoted as if it were part of the law of that case. The Crescent Case adheres to the fundamental principle announced in the Sullivan Case. In the Sullivan Case it is held, as above stated, that one who appropriates water on the public domain before a patent is issued to another can hold the water as against the patentee, even though it be percolating water.

The Crescent Case holds that where the water issues from patented land an appropriation afterwards made is not valid as against the patentee if the water is percolating water.

The case of *Willow Creek Irr. Co.* v. *Michaelson,* 21 Utah, 248, 60 Pac. 943, 51 L. R. A. 280, 81 Am. St. Rep. 687, in its facts is identical in principle with the Crescent Case, but the court in the last paragraph of its opinion is more specific as to the exact point upon which the case was decided. The fact that the water arose on the land and was appropriated after it ceased to be government domain was the point upon which the decision turned. See, also a case decided this term *(Peterson* v. *Eureka Hill M. Co.,* 53 Utah, 70, 176 Pac. 729). None of these cases have been overruled or modified by subsequent decisions, unless we rely on dictum as authority and entirely ignore the questions decided. Neither are they in conflict one with the other. The concrete doctrine of these cases, when reduced to the last analysis, is, if the land from which the water is taken is public domain, the water is subject to appropriation whether it is percolating water or water flowing in well-defined channels either above or under the surface. If it is private land and the water is percolating, as known and understood at the common law, then it is not the subject of appropriation as against the owner of the land.

The foregoing cases are sufficient, in our judgment, to demonstrate the necessity in the present case of requiring the record to show whether or not the adjacent land on the west was public domain when the alleged appropriation was made.

The question as to whether the fee of the land in the highway where the water issues from the ground is in the owner of the adjacent land on the west or in the public is material for the same reason, though perhaps in a less degree. If the

fee is in the adjacent owner of the land the public has an easement for a highway only. For every other purpose it belongs to the owner of the land.

The next question is the source of the water used to irrigate the adjacent land on the west in which the trench was dug. If it was from a river, creek, or other natural stream the waters of which have been appropriated and the waste waters from irrigation find their way back into the stream and again become a part thereof, a question will be presented which as yet this court has not determined.

In *Garns* v. *Rollins*, 41 Utah, 260, 125 Pac. 867, Ann. Cas. 1915C, 1159, it was held that the run-off, waste, and seepage from irrigation are not subject to appropriation as against the owner of the land irrigated who desires to recapture it and apply it on his own land.

In *Roberts* v. *Gribble*, 43 Utah, 411, 134 Pac. 1014, the water in dispute resulted mainly from the irrigation of lands in the vicinity. Defendant's land became swampy. He put in a drain system, collected the water, and used it upon his own land. In doing so he deprived plaintiff of its use. This court decided the case in favor of defendant.

The principle underlying these two cases seems to be that waste and seepage waters from artificial irrigation constitute an artificial, rather than a natural, source of supply, and therefore are not the subject of appropriation. This principle is undoubtedly correct as applied to the facts in the Garns Case, and the Roberts-Gribble Case relies on the Garns Case as authority. If it goes no farther we are of the opinion it rests upon a firm foundation.

We appreciate the importance of every decision by this court relating to the subject of irrigation and water rights, especially when we realize that even fugitive suggestions outside the issues of the case as well as expressions applicable to the facts may be erroneously referred to and relied on in subsequent cases. For these reasons we desire before attempting to decide the case at bar to have before us sufficient facts upon which to base an intelligent opinion.

It is therefore ordered that the case be remanded to the trial court for further proceedings in accordance with the views

herein expressed; that said court permit the parties litigant, if they desire, to amend their pleadings so as to present every issue necessary in their judgment to be determined.   Each party to pay his own costs.

CORFMAN, C. J., and FRICK, WEBER, and GIDEON, JJ., concur.