### HORNE et al. v. UTAH OIL REFINING CO.

Nos. 3645, 3684. Decided October 8, 1921. Rehearing Denied December 28, 1921. (202 Pac. 815.)

1.  WATERS AND WATER COURSES—COMPLAINT BY LANDOWNERS OF INJURY TO ARTESIAN WELLS HELD TO STATE CAUSE OF ACTION. Complaint of owners of land above artesian well basin, stating their use of water from the basin, and that defendant, having driven large wells, threatens to place large pumps thereon, and carry the water away from the basin for commercial uses and deprive plaintiffs of water to which they are entitled, *held* to state a cause of action for equitable relief; Laws 1919, c. 67, § 8, being inapplicable.

2.  WATERS AND WATER COURSES—OWNER OF LAND ENTITLED TO "REASONABLE USE" OF PERCOLATING WATERS. The owner of land is entitled only to a reasonable use of the percolating waters under his land for purposes connected with the beneficial ownership or enjoyment of his own land; and, for the use of such water by an owner to be a "reasonable use," especially in an artesian district, it should be limited first to his just proportion according to his surface area, and, second, he should not be entitled even to this quantity to the injury of others similarly situated, unless it is reasonably necessary for the beneficial purposes to which he devotes the water; and the owner has no right to injure his neighbors by an unreasonable diversion of the water for the purpose of sale or carriage to distant lands.[1]

3.  WATERS AND WATER COURSES—JOINDER OF ARTESIAN DISTRICT LANDOWNERS IN COMPLAINT TO PREVENT DIVERSION OF ARTESIAN WATERS HELD PROPER. Joinder as plaintiffs of owners of land in artesian well district in suit to prevent diversion of waters from the artesian well basin for manufacturing purposes on land outside the district *held* proper, under Comp. Laws 1917, § 6506, the plaintiffs having a common interest.

4. PLEADING—PLEADING HELD NOT A COUNTERCLAIM. In action by
   owners of land in artesian basin, to prevent diversion of ar-
   tesian waters, defendant's pleading, entitled to counterclaim,
   not seeking to establish any affirmative right, *held* not to re-
   quire either demurrer or reply, and defendant's motion for
   judgment on his pleading was properly denied.

Appeal from District Court, Third District, Salt Lake
County; *W. H. Bramel,* Judge.

Action by George H. Horne and others against the Utah
Oil Refining Company. From judgment for plaintiffs, de-
fendant appeals.

MODIFIED AND AFFIRMED.

*Ball, Musser, & Robertson,* of Salt Lake City (*Ogden
Hiles,* of Salt Lake City, of counsel), for appellant.

*H. L. Mulliner,* of Salt Lake City, for respondents.

---

[1] *Crescent Min. Co.* v. *Silver King Min. Co.,* 17 Utah, 444, 54
Pac. 244, 70 Am. St. Rep. 810; *Willow Creek Irr. Co.* v. *Michaelson,*
21 Utah, 248, 60 Pac. 943, 51 L. R. A. 280, 81 Am. St. Rep. 687;
*Herriman Irr. Co.* v. *Keel,* 25 Utah, 96, 69 Pac. 719; *Sullivan* v.
*Mining Co.,* 11 Utah, 438, 40 Pac. 709, 30 L. R. A. 186; *Stowell* v.
*Johnson,* 7 Utah, 215, 26 Pac. 290; *Stookey* v. *Green,* 53 Utah, 311,
178 Pac. 586; *Rasmussen* v. *Moroni Irr. Co.,* 56 Utah 140, 189 Pac.
572; *Mountain Lake Min. Co.* v. *Midway Irr. Co.,* 47 Utah, 371, 154
Pac. 584; *Bastain* v. *Nebeker,* 49 Utah, 390, 163 Pac. 1092; *Peter-
son* v. *Lund,* 57 Utah 162, 193 Pac. 1087; *Garnes* v. *Rollins,* 41
Utah, 260, 125 Pac. 867, Ann. Cas. 1915C, 1159.

THURMAN, J.

This is an action in equity to enjoin defendant from op-
erating certain wells situated in an alleged artesian district
in the northwest part of Salt Lake City, Utah.

In order to unravel certain complications which have de-
veloped during the progress of the cause, it is necessary to
briefly summarize in chronological order the various moves

made by the parties litigant and orders of the court in respect thereto since the commencement of the action.

The complaint was filed in the district court of Salt Lake county July 21, 1920, and on the next day plaintiffs moved the court for a temporary injunction. On the 29th day of the same month defendant filed its demurrer to the complaint, and on the 3d day of August, next following, filed its answer. On the date last mentioned the court commenced hearing the evidence on the motion for an injunction, which proceeding occupied the attention of the court for several days before the cause was submitted. On August 14th the court entered an order allowing plaintiffs' motion for an injunction. On the 18th day of the same month defendant filed its amended answer and a document designated a counterclaim to the complaint, the demurrer thereto not having been formally disposed of. On the 8th day of September next following the court filed its findings of fact and conclusions of law on the motion for injunction, and directed decree to be entered thereon. Entry of the judgment was duly made September 13, 1920. On November 20th thereafter, defendant moved the court to set aside and annul its findings, conclusions, and decree, and at the same time called for a decision of its. demurrer filed July 29th, as heretofore stated. On December 22, 1920, the court entered its judgment denying defendant's motion to set aside the judgment entered in September, and at the same time overruled defendant's demurrer and denied its right to be heard on the alleged counterclaim, on the ground that it was not filed in time. On March 9, 1921, defendant appealed from the judgment entered in September, which appeal was taken upon the judgment roll alone. Assignments of error on said appeal were filed in time. Thereafter defendant filed its bill of exceptions, and on June 2, 1921, served and filed its second notice of appeal. On August 11, 1921, plaintiff filed and served notice to dismiss both appeals, on the alleged ground that the attempted second appeal was ipso facto an abandonment of the first appeal, and that the second appeal was not taken in time. In response to these motions to dismiss, defendant, on August 13th next

following, filed a motion to consolidate the alleged appeals, and to amend its assignments of error.

It is unnecessary to specify the particulars constituting the complications. The situation, however, was relieved of its complexity, to some extent, by stipulation.

At the hearing of the motions last referred to on August 29, 1921, it was stipulated by the parties that, in the event that this court should determine that the first appeal is valid, and in force, then the record on said appeal, which was taken upon the judgment roll alone, might be amended by adding thereto the bill of exceptions and assignment of errors afterwards filed in the cause. The court is not only of the opinion that the first appeal is valid and in force, but also that the amendment of the record, by adding thereto the bill of exceptions and assignments of error as above stated, preserves the substantial rights of all the parties to the action, and puts the case in condition to be disposed of on its merits. We therefore deem it unnecessary to determine the questions of law presented on the respective motions to dismiss and consolidate the appeals.

The complaint of plaintiffs, as far as material, in substance alleges: That there is located in the northwest portion of Salt Lake City, Utah, a certain artesian district extending approximately four blocks north and south and about three blocks east and west, embracing certain city blocks specifically mentioned; that underlying said area of land is a well-defined artesian basin, located in a well-defined underground pervious stratum; that said basin is located below compact impervious strata, and is under pressure; that the district is such that when the impervious cap layer is pierced the water is forced to flow above the surface of the ground in artesian wells; that the basin is fed from the mountains and canyons adjacent to Salt Lake City, and is underground from 75 to 125 feet, sloping gradually to the north and west; that the said subterranean belt or basin is common to the lands of the plaintiffs; that the water of said basin in quality is superior to surface waters, and is extremely valuable and necessary to the use of the properties located above said basin. It is then

alleged that plaintiffs and their predecessors in title for more
than 40 years have been the owners of the land within said
district, and that the same has been used for residence pur-
poses, with two exceptions specifically mentioned; that said
homes are surrounded by lawns, orchards, and gardens which
are irrigated by artesian wells situated thereon, which also
supply plaintiffs' homes with water for domestic and culin-
ary purposes; that all of said waters have been used by plain-
tiffs and their predecessors in title for said purposes for a
period of from 15 to 45 years; that said water is necessary
in the occupation and use of said properties, and to maintain
the value thereof and preserve the vegetation thereon; that
said water rights belong to said land, and are appurtenant
thereto; that there is no other water supply connected with
or at this time available for use upon said properties; that,
prior to the sinking of the wells by the defendant, afterwards
alleged in the complaint, the plaintiffs' wells then in use were
sufficient to utilize the said underground water supply and
the whole thereof, giving to each well a sufficient pressure
so that the water could be used to advantage for the purposes
mentioned without lowering the supply of said water to the
point where the pressure would be diminished or destroyed.

The complaint then shows that defendant, having procured
an option on certain land 10 rods long by 10 rods wide in the
northwest corner of said artesian district, at a lower point
than the land owned by plaintiffs, on or about May 27, 1920,
completed a large 6-inch artesian well on said optioned prop-
erty, and has since completed six wells of similar size there-
on; that plaintiffs' wells were only 2 inches in diameter. It
is then alleged that the wells so driven by defendant are
draining said basin faster than the same is being supplied,
and, as a result, the pressure in all of plaintiffs' wells has
been diminished; that several of plaintiffs' wells driven at
higher points have dried up, and the pressure in several
others has been reduced so that the flow of water therefrom
is insufficient for the purposes to which it has been devoted,
or for any practical purpose whatever; and that the pressure
of all of said wells in a short time will be destroyed.

Plaintiffs further allege that defendant's wells have not been driven for the purpose, or with the intention, of using or utilizing the water on the land upon which the wells are driven, or upon any property within said artesian district, but were driven by defendant for the purpose of conveying the water away from the land upon which the wells were driven to its oil refining plant several blocks north and outside of said artesian district, there to be used for commercial and manufacturing purposes; that defendant threatens to, and, unless restrained, will, place large pumps upon said wells and commence pumping the water through said wells from said basin, and will totally deprive plaintiffs of the use of said water. Plaintiffs further allege that where plaintiffs' wells have been dried up as alleged plaintiffs have been compelled to carry water for domestic use, and that their lawns, orchards, and gardens are being destroyed for want of water; that if said wells are closed for any considerable length of time there is great danger of change in the underground formation, so that the pressure in said wells cannot be restored, and plaintiffs' water rights, will thereby be wholly lost, to their great and irreparable injury, for which they have no plain, speedy, or adequate remedy at law; that such water supply cannot be restored from any other source, nor plaintiffs' property be preserved, except by closing defendant's said wells; that the bringing of separate suits for damages would result in a multiplicity of actions; that the damage to plaintiffs is continuous, and depends upon how long defendant may be permitted to deprive them of their water supply; that it is impossible to allege the exact damage which will be suffered by each of the plaintiffs; that the plaintiffs have already suffered considerable damage, and unless defendant is restrained plaintiffs' damages will exceed the sum of $250,000; that defendant's wells can be shut off without injury to them.

Plaintiffs pray that defendants be restrained from drilling wells upon its said land; that the wells already drilled be stopped; that plaintiffs then be permitted to show the damages suffered by them, and have the same adjudicated; that

all persons similarily interested be permitted to join in the action. Plaintiffs also pray for an order restraining defendant from committing said wrongs pending the trial of the action, and for general relief.

By leave of court the complaint was afterwards amended, in which it was alleged that defendant's wells were carelessly driven so as to leave jagged and irregular openings, by means of which the waters of said basin would be wasted and destroyed.

Serious contention is made by defendant to the effect that its alleged counterclaim, not being challenged by either demurrer or reply, stands confessed upon the record; that defendant was entitled to judgment thereon, and that the court erred in refusing to consider it. On the other hand, respondents insist that the so-called counterclaim was not filed in time, and that in any event the defendant was not prejudiced by the action of the court thereon.

It is the decsire of the court, in determining the issues involved, to do so without regard to technical questions of procedure if it can be done without prejudice to the substantial rights of the parties. Should it appear that the document denominated a counterclaim has substantial merit, and that the defendant has been prejudiced by any action of the trial court in respect thereto, we will be strongly inclined to give defendant the benefit of its exception to the ruling of the court thereon, whatever may be the actual fact as to whether or not the document was filed in time. We will defer further consideration of this question to a later stage of the opinion.

The issues raised by defendant's demurrer to the complaint present by far the most important questions involved in this appeal. The demurrer not only presents the question whether the complaint is sufficient in form, but also the far-reaching question whether the facts constituting the alleged cause of action can be stated in any form so as to entitle plaintiffs to either legal or equitable relief. In dealing with the question of form we must pay due regard to the provisions of the Code, which provides that "There is in this state

but one form of civil action for the enforcement of, or protection of, private rights, and the redress of, or prevention of, private wrongs," and that the complaint is merely "a statement of the facts constituting the cause of action in ordinary and concise language." Adhering to this standard, and assuming, for the time being, that the facts attempted to be pleaded, if properly pleaded, would, as matter of law, justify the relief demanded we will now proceed to examine the complaint as to the question of form.

Without needless repetition the complaint in ordinary and concise language shows the following facts: (1) The existence of the artesian district, including the lands of plaintiffs and defendant; (2) the wells of plaintiffs, their size and dimensions, the beneficial uses to which the water has been devoted, the absolute necessity therefor, and the absence of any other available supply; (3) the sinking and operation of defendant's wells, the size and dimensions thereof, the consequent injury to plaintiffs' wells, and the ultimate destruction thereof for practical purposes if defendant is permitted to continue their operation; (4) the fact that defendant threatens to place large pumps upon its wells, and by means thereof will totally deprive plaintiffs of the water to which they are entitled; (5) that because of said wrongs plaintiffs have been compelled to carry water to their homes for domestic use, and their lawns, orchards, and gardens are being destroyed for want of water; (6) that the defendant's wells have not been driven for the purpose of utilizing the water upon the land in which they were driven, but to be conducted and conveyed away to its oil refinery beyond the boundaries of said artesian district, there to be used for commercial and manufacturing purposes.

Plaintiffs allege irreparable injury, and that there is no plain, speedy, or adequate remedy at law for the wrongs complained of. They pray for specific and general relief.

In this brief résumé of the facts pleaded, we have purposely omitted allegations in respect to specific damages. We are of opinion that that question is not involved in the issues submitted for our determination. Assuming that equity af-

fords a remedy for wrongs of the nature here complained of, the question is, Does the complaint state facts sufficient to entitle plaintiffs to equitable relief? We have seen that plaintiffs are the owners in severalty of the land upon which their wells were driven; that they have used and are using the water for beneficial purposes, and that such water is absolutely necessary for such purposes; that to deprive them of the use of the water in the manner alleged not only means the destruction of their lawns, orchards, and gardens, and renders it impracticable to occupy their homes for residential purposes, but also means the probable destruction of the wells themselves by changing the underground formation so that the water may be permanently and irretrievably lost as far as plaintiffs' use is concerned. We have seen that, while defendant is also the owner of a parcel of land within the artesian district described, it has driven six wells upon a small portion of land owned by it, each of which has at least nine times the capacity of any one of plaintiffs' wells, and that by means of said wells defendant is rapidly draining the basin from which plaintiffs derive their supply of water. Entirely independent of the fact that defendant does not intend to use the water for the purpose of improving the land upon which the wells are sunk, but contemplates conveying the water beyond the boundaries of the artesian district, there to be used for commercial and manufacturing purposes, it does seem to the court that, if equity can afford relief in a case of this nature, plaintiffs' complaint states a cause of action for such relief.. It is unnecessary to make further comment as to the matter of form. The question of overshadowing importance in the instant case is, Does equity afford a remedy in a case of this nature or is it a case of damnum absque injuria?

While the complaint alleges the beneficial use of the water long prior to the alleged wrongs complained of, we do not understand that plaintiffs base their claim of right upon the law of appropriation. There is no allegation in the complaint from which it may be inferred that plaintiffs make any such claim. If it could be inferred that such was intended as the

basis of their claim, we would feel compelled to hold that the complaint does not state facts sufficient to sustain a right of that nature. There is nothing whatever to show that the water in question was the subject of appropriation under any law which recognizes the doctrine of "First in time, first in right." Rather does it appear, notwithstanding their allegations of priority, that plaintiffs base their right upon their ownership of the land upon which their wells were driven, which land, in common with that of defendant, constitutes an artesian district beneath the surface of which exists the water in controversy under a superimposed cap layer or stratum of impervious material.

The water as it exists underground in the porous or pervious stratum alleged in the complaint constitutes a supply common to the lands of all the parties, both plaintiffs and defendant. Not only is it alleged in the complaint that all of said lands are within the artesian district, and that the flow of water from defendant's wells diminishes the flow from plaintiffs' wells, but defendant, in its brief filed in the case, makes the following statement:

"The pleadings in this case show, and it is an admitted truth, that the waters in controversy are underground percolating waters, which percolate underneath, in, and through the lands of each of the plaintiffs, and the defendant, respectively."

We are inclined to adopt, the views expressed by defendant in the excerpt quoted, that the waters, while in the ground, are what are known as "percolating" waters. A reasonable interpretation of the complaint itself would seem to justify such conclusion. With this conclusion as a basis for its contention, defendant makes the point that the waters thus percolating through and underneath its land cannot be distinguished from the soil itself, and therefore belong to the owner of the land. The proposition is advanced that "whoever owns the soil owns also the waters therein percolating through it." In support of the proposition defendant cites the following authorities: *Crescent Min. Co.* v. *Silver King Min. Co.*, 17 Utah, 444, 54 Pac. 244, 70 Am. St. Rep. 810; *Willow Creek Irr. Co.* v. *Michaelson*, 21 Utah, 248, 60 Pac.

943, 51 L. R. A. 280, 81 Am. St. Rep. 687; *Wheatley* v. *Baugh,* 25 Pa. 582, 64 Am. Dec. 721, and note p. 727; *Haldeman* v. *Bruckhart,* 45 Pa. 514, 84 Am. Dec. 511; *Lybe's Appeal,* 106 Pa. 626, 51 Am. Rep. 542; *Buffum* v. *Harris,* 5 R. I. 243; *Herriman Irr. Co.* v. *Keel,* 25 Utah, 96, 69 Pac. 719; *Taylor* v. *Welch,* 6 Or. 198; *Hanson* v. *McCue,* 42 Cal. 305, 10 Am. Rep. 299; *So. Pac. Co.* v. *Dufour,* 95 Cal. 615, 30 Pac. 783, 19 L. R. A. 92; *Gould* v. *Eaton,* 111 Cal. 639, 44 Pac. 319, 52 Am. St. Rep. 201; *Los Angeles* v. *Pomeroy,* 124 Cal. 597, 57 Pac. 585; *Acton* v. *Blundell,* 12 M. & W. 324; *Chasemore* v. *Richards,* 7 H. L. Cas. 349; Cooley on Torts (2d Ed.) pp. 689, 690; 3 Kinney on Irr. § 49.

It must be conceded that, as applied to the special facts in each of the cases cited, the proposition advanced by defendant finds ample support. In fact, *"Cujus est solum ejus est usque ad infernos,"* or, "He who owns the soil owns it to the lowest depth below," is a maxim of the common law almost coeval with its very beginning.

Three decisions of this court are cited in the above-mentioned cases. Neither of them has any bearing upon the question presented here. In the case of *Crescent Min. Co.* v. *Silver King Min. Co.,* supra, it was held that the owner of the land in which water is found in a percolating state is the owner of the water, and can apply it to his own use whenever he wishes—a doctrine which, under the facts of that case, is incontrovertible, and no attempt has ever been made to controvert it in any subsequent case. Let it be borne in mind, however, that in that case no one claimed a prior right to the water by virtue of a prior appropriation under the federal laws or laws of the state, nor was it a case in which the Crescent Company could claim a right by virtue of any sort of interest in common with the defendant Silver King Company. If the Crescent Company had owned a right to the water by prior appropriation under some law authorizing appropriation, as in the case of *Sullivan* v. *Mining Co.,* 11 Utah, 438, 40 Pac. 709, 30 L. R. A. 186, or in *Stowell* v. *Johnson,* 7 Utah, 215, 26 Pac. 290, in which a question analogous in principle was determined by the court, or a right in com-

mon as above stated, a different case would have been presented resulting, perhaps, in a different determination.

Another Utah case relied on is that of *Willow Creek Irr. Co.* v. *Michaelson,* supra, in which it was held that percolating water arising in private land after the owner of the land obtains his patent thereto is not the subject of appropriation by others. The case is exactly similar in principle to the *Crescent Min. Co. Case* which we have just reviewed, except that the decision in the *Willow Creek Case* is clearer cut as to the exact point in controversy. Both of these cases, together with many other Utah cases, received a somewhat extended review by this court in the recent case of *Stookey* v. *Green,* 53 Utah, 311, 178 Pac. 586, and need not be further considered in this connection.

*Herriman Irr. Co.* v. *Keel,* supra, perhaps goes farther than any other case decided by this court in support of the doctrine that to the owner of the soil belongs the waters percolating therein as against one claiming a prior appropriation. The case is unsatisfactory as an authoritative decision for several reasons: (1) It was rendered by a divided court, each of the three justices delivering a separate opinion disagreeing in essential particulars; (2) in the main it was decided upon a question of fact partially sustaining a finding of the trial court to the effect that the driving of defendant's tunnel did not interfere with the water to which plaintiff was entitled; (3) it does not appear that the real basis of plaintiff's right to the water by prior appropriation, namely, the laws of Congress, or of the state, authorizing appropriation, or authorities in support thereof, were presented to, or considered by, the court. On the other hand, it does appear that the common-law doctrine relied on by defendants was ably presented by defendants' counsel, and also considered by the court.

In any event, the doctrine enunciated in that case, in so far as it appears to support the common-law rule relating to percolating waters relied on by appellant in the instant case, has been seriously discredited, if not overruled, by this court in more recent decisions. *Rasmussen* v. *Moroni Irr.*

*Co.*, 56 Utah 140, 189 Pac. 572; *Mountain Lake Min. Co.* v. *Midway Irr. Co. et al.*, 47 Utah, 371, 154 Pac. 584; *Bastian* v. *Nebeker*, 49 Utah, 390, 163 Pac. 1092; *Peterson* v. *Lund*, 57 Utah 162, 193 Pac. 1087; and *Stookey* v. *Green*, supra. It cannot be denied that the decided trend of the decisions of this court in recent years has been to reaffirm the doctrine enunciated in the earlier cases—*Stowell* v. *Johnson* and *Sullivan* v. *Min. Co.*, supra—which, in effect, hold that the common-law doctrine, both as to riparian rights and percolating water, are inapplicable to conditions existing in this jurisdiction, and cannot prevail as against a right acquired by prior appropriation. Even if the doctrine enunciated in the *Herriman Case* had not been modified or overruled by later decisions, the relative conditions of the parties and properties involved in that case were such as to render the decision wholly inapplicable to the conditions existing in the case at bar. We need not occupy time and space in making the distinction; it will readily occur to the reader upon the most casual examination of the facts and conditions referred to. It is sufficient to say that the instant case is sui generis in this jurisdiction. The questions involved have never been determined by any previous decision of this court. It, however, is not a case of the first impression. The identical question presented here has been adjudicated and determined in other jurisdictions of the country, and its determination strongly foreshadowed in the opinions of this court in *Peterson* v. *Lund*, supra, and *Garns* v. *Rollins*, 41 Utah, 260, 125 Pac. 867, Ann. Cas. 1915C, 1159.

As a prelude to this phase of the case, we refer to the conflicting doctrines of the old common law, one to the effect that he who owns the soil owns it to the lowest depth, and the other that he who owns the soil owns the percolating waters therein, and may use the same as he pleases, even though he thereby diverts and appropriates water percolating in the land of an adjacent proprietor. The two doctrines are in hopeless conflict, and utterly incompatible one with the other. This, perhaps, has had more to do than anything else in evolving what is now known as the "American doctrine"—the

doctrine of "reasonable use." This doctrine recognizes the correlative rights of adjacent landowners to the underground waters percolating in and through their respective tracts of land.

The earliest, most notable enunciation of the doctrine, according to our examination of the cases, is found in the exceedingly able opinion of Mr. Justice Bartlett of the Supreme Court of New Hampshire, in *Bassett* v. *Salisbury Mfg. Co.*, 43 N. H. 569, 82 Am. Dec. 179. The doctrine was reaffirmed by the same court in *Swett* v. *Cutts*, 50 N. H. 439, 9 Am. Rep. 276, in which the *Bassett Case* is referred to as a "well-considered case." Opportunity will not permit of more than a bare reference to these early cases. The opinion in the *Bassett Case* was afterwards adopted in full by the California Supreme Court in the famous case of *Katz* v. *Walkinshaw*, reported first in 141 Cal. 116, 70 Pac. 663, 64 L. R. A. 236, 99 Am. St. Rep. 35, and afterwards, on rehearing, in 141 Cal. 116, 74 Pac. 766, 64 L. R. A. 236, 99 Am. St. Rep. 35. The doctrine as enunciated in all of these cases, and many others to the same effect, seems to find its principal authority in the maxim "*Sic utere tuo ut alienum non lædas*," or, "So use your own as not to injure another's property."

As the *Walkinshaw Case* is generally held to be the leading case in the arid region upon this question, and as the physical and climatic conditions existing in that case as described in the opinion are strikingly similar to those existing here, we have deemed it important to give the case something more than a passing notice. The case, stated by Mr. Justice Temple, as the same is abstracted by the court on rehearing (141 Cal. at page 138, 70 Pac. 664), as far as material here, reads as follows:

"The action was brought to enjoin defendant from drawing off and diverting water from an artesian belt, whch is in part on or under the premises of plaintiffs, and to the water of which they have sunk wells, thereby causing the water to rise and flow upon the premises of plaintiffs, and which they aver had constantly so flowed for 20 years before the wrong complained of was committed by defendant. The water is necessary for domestic purposes and for irrigating the lands of plaintiffs, upon which there

are growing trees, vines, shrubbery, and other plants, which are of great value to plaintiffs. All of said plants will perish, and plaintiffs will be greatly and irreparably injured if the defendant is allowed to divert the water.

"These facts are admitted, and, further, that defendant is diverting the water for sale, to be used on lands of others distant from the saturated belt from which the artesian water is derived."

It being conceded in that case that the water was underground percolating water, as distinguished from water flowing in subterranean channels, the defendant relied upon previous California decisions which asserted and applied literally the maxim, *Cujus est solum, etc.*, and cited the following cases: *Hanson* v. *McCue*, 42 Cal. 303, 10 Am. Rep. 299; *Sou. Pac. R. R. Co.* v. *Dufour*, 95 Cal. 616, 30 Pac. 783, 19 L. R. A. 92; *Gould* v. *Eaton*, 111 Cal. 641, 44 Pac. 319, 52 Am. St. Rep. 201; *Los Angeles* v. *Pomeroy*, 124 Cal. 597, 57 Pac. 585.

These same cases are also cited and relied on by defendant in the instant case. Concerning them, it is sufficient to say they were all, in effect, overruled by the *Walkinshaw Case* in so far as they tend to support defendant's contention in the present case. Many other cases relied on by defendant here, in addition to those enumerated, were carefully reviewed by the California court, and either distinguished or the doctrine enunciated by them held to be inapplicable to conditions existing in California. The court decided the issues in favor of plaintiff, and reversed the judgment which had been entered for defendant in the court below.

The facts in that case, as appears from the brief abstract above quoted, together with the remedy sought, are almost an exact parallel with those existing in the instant case. The holding of the court is correctly reflected in five paragraphs of the syllabus, which we here quote at length:

1. Each owner of soil lying in a belt which becomes saturated with percolating water is entitled to a reasonable use thereof on his own land, notwithstanding such reasonable use may interfere with water percolating in his neighbors' soil; but he has no right to injure his neighbors by an unreasonable diversion of the water

percolating in the belt for the purpose of sale or carriage to distant lands.

"2. The maxim, '*Sic utere tuo et alienum non lœdas,*' is applicable as between adjoining users of percolating water, whenever justice requires its application.

"3. The owners of artestian wells sunk in· an artesian belt of percolating water, the waters from which are necessary for domestic use and irrigation of their lands, on which are growing trees, vines, shrubbery, and other plants of great value, are entitled to an injunction to restrain the diversion of the water percolating in the artesian belt, by an owner of land situated in the belt, for the purpose of conveying the same to distant lands for sale, to the irreparable injury of the plaintiffs.

"4. *Where the complaint for the injunction stated in substance that plaintiffs had wells in their respective tracts, from which water flowed to the surface of the ground, which was necessary for domestic use and irrigation of their lands, and that the defendant by means of wells and excavations on her own lands drew the waters from the plaintiffs' lands · and conveyed them to distant lands, it states a cause of action for an injunction to restrain the diversion of percolating water; and an averment that the diversion was from an underground stream may be regarded as surplusage.* (Italics ours.)

"5. The common-law rule that percolating water belongs unqualifiedly to the owner of the soil, and that he has an absolute right to extract and sell it, is not applicable to the conditions existing in a large part of this state, where artificial irrigation is essential to agriculture,· and artesian wells in percolating belts are necessarily used for that purpose."

Assuming that the doctrine enunciated in the *Walkinshaw Case* is a sound exposition of the law applicable to conditions existing in this jurisdiction, then it must be conceded that the complaint in the instant case tested by the rule laid down in the fourth paragraph last above quoted meets every requirement and states a cause of action for equitable relief.

There perhaps was never a case decided by the Supreme Court of California with more painstaking care and mature deliberation than the *Walkinshaw Case,* as indicated by the following excerpt from the first part of the court's opinion (141 Cal. at page 120, 74 Pac. 766):

"A rehearing was granted in this case for the purpose of considering more fully, and by the aid of such additional arguments as might be presented by persons not parties to the action, but

vitally interested in the principle involved, a question that is
novel and of the utmost importance to the application to useful
purposes of the waters which may be found in the soil.

"Petitions for rehearing were presented not only in behalf of
the defendant, but also on behalf of a number of corporations
engaged in the business of obtaining water from wells and dis-
tributing the same for public and private use within this state,
and particularly in the southern part thereof. Able and ex-
haustive briefs have been filed on the rehearing. The principle
decided by the late Justice Temple in the former opinion, and
the course of reasoning by which he arrived at the conclusion,
have been attacked in these several briefs and petitions with
much learning and acumen. It is proper that we should here
notice some of the objections thus presented.

The court then proceeds to a consideration of the questions
involved, finally arriving at the conclusion that the doctrine
of reasonable use of underground percolating water should
be adhered to, as expressed in the former opinion of the
court.

The *Walkinshaw Case,* and subsequent decisions of the
California court relating to conditions almost identical or
cognate to a limited extent, have been subjected to an ex-
haustive analysis by Mr. Wiel in his excellent work on Water
Rights in the Western States. The analysis begins in volume
2 (3d Ed.) at section 1043, and concludes with section 1065,
all of which is well worth a careful perusal by the reader who
desires a thorough acquaintance with the law as declared by
the California court. It will be found upon examination that
many of the cases are distinguished from the *Walkinshaw
Case,* and, for that reason, in some cases the relief sought for
was denied. The writer, however, has failed to find that the
*Walkinshaw Case,* as to the doctrine of "correlative rights"
or "reasonable use," has been overruled, or even modified,
by any subsequent case where the facts and conditions were
substantially similar. As the work referred to may not be
within the easy reach of all who may desire to make a care-
ful investigation of the cases reviewed by the author, we cite
the cases in this connection in the order in which they ap-
pear in the author's analysis: *Katz* v. *Walkinshaw,* supra;
*McClintock* v. *Hudson,* 141 Cal. 275, 74 Pac. 849; *Cohen* v.

*La Canada W. Co.,* 142 Cal. 437, 76 Pac. 47; Id., 151 Cal. 680, 91 Pac. 584, 11 L. R. A. (N. S.) 752; *Montecito, etc., Co.* v. *Santa Barbara,* 144 Cal. 578, 77 Pac. 1113; *Newport* v. *Temescal W. Co.,* 149 Cal. 531, 87 Pac. 372, 6 L. R. A. (N. S.) 1098; *Burr* v. *Maclay Co.,* 154 Cal. 428, 98 Pac. 260; *Barton* v. *Riverside W. Co.,* 155 Cal. 509, 101 Pac. 790, 23 L. R. A. (N. S.) 331; *Hudson* v. *Dailey,* 156 Cal. 617, 105 Pac. 748; *Los Angeles* v. *Hunter,* 156 Cal. 603, 105 Pac. 755; *Miller* v. *Bay Cities W. Co.,* 157 Cal. 256, 107 Pac. 115, 27 L. R. A. (N. S.) 772. Previous to his review of the cases cited the same author, in sections 1039 and 1040, briefly defines and discusses the "English rule" both as to percolating water and water courses, and carefully makes the distinction. In section 1041, the "American rule" is referred to as a modification of the English rule, and reference is made to list of cases from 17 American jurisdictions where the English rule "has been either expressly departed from or doubted in one form on another." The cases are cited in the note to section 1066, and are from the following states: California, Colorado, Delaware, Georgia, Idaho, Indiana, Iowa, Kansas, Kentucky, Maryland, Massachusetts, Minnesota, Missouri, New Hampshire, New Jersey, New Mexico, New York, West Virginia, and also from the United States Supreme Court.

We feel justified in referring the reader to Mr. Wiel's analysis of the California cases for further information. We are not presumptuous enough to believe we can improve upon the review made by that distinguished author.

The cases cited from other jurisdictions are altogether too numerous for an extended review. The citation alone would occupy considerably more than a page of the published report. We must therefore forego the temptation to make special reference except perhaps to one or more cases of unusual importance.

*Meeker* v. *City of East Orange,* 77 N. J. Law, 623, 74 Atl. 379, 25 L. R. A. (N. S.) 465, 134 Am. St. Rep. 798, is referred to by Mr. Wiel in section 1066 of his work as a case "specially worth reading." It is unquestionably a most interesting case, and directly in point upon the question as to

whether the "English rule" or the "American rule" concern-
ing percolating waters should prevail in that jurisdiction.
The case may be said to be the leading case upon that ques-
tion in the nonarid region of the country. The opinion is by
Chancellor Pitney, of the New Jersey Court of Errors and
Appeal, now a Justice of the Supreme Court of the United
States. In view of the weight that should be given to the
case, both on account of the similarity of conditions and the
high standing of the distinguished writer of the opinion, we
deem it worth while to state the facts in the language of the
court:

"Plaintiff brought two actions in one of the district courts of
the city of Newark to recover damages for the diversion by the
defendant of percolating underground water. In each case the
district court rendered judgment in favor of the defendant, and
upon appeal to the Supreme Court the judgments were affirmed.
By writs of error the records are brought here for review.

"The cases were submitted to the trial court upon agreed state-
ments of fact. In one case it is stipulated that plaintiff owns
and occupies a farm of about 100 acres, situate in the valley of
Canoe brook, in the townships of Millburn and Livingston, in the
county of Essex. He is a milkman, and has for a number of
years used his farm for the pasture and support of his cows and
horses. Canoe brook and two small streams tributary thereto
flow through his farm. Upon the farm there is also a spring, in-
closed by a springhouse, the water of which has for years been
used by the plaintiff for drinking purposes and for the storing
and keeping of his milk. His cattle in pasture have for years
resorted to the brook and its tributaries for drinking water. The
defendant, the city of East Orange, under the authority of 'An
act to enable cities to supply the inhabitants thereof with pure
and wholesome water,' approved April 21, 1876, and the acts sup-
plemental thereto and amendatory thereof (P. L. 1876, p. 366;
Gen. St. 1895, pp. 646-650, §§ 902-917), acquired a tract of land
containing about 680 acres situate in the valley of Canoe brook in
the township of Millburn, and installed thereon a water plant con-
sisting of about 20 artesian wells, situate further down the stream
than plaintiff's farm and distant upwards of a mile therefrom. In
the construction of these wells, and of the works, mains, and res-
ervoirs connected therewith, the city has expended more than
$1,000,000. A few years prior to the commencement of the action
the city began to take water from the wells, and has thus taken
percolating underground water which, but for its interception,

would have reached the plaintiff's spring or stream. No water other than percolating water has been taken, and no water has been taken out of any surface stream or from the spring of the plaintiff after it (the water) has appeared upon the surface or in any surface or stream. In this action the plaintiff seeks damages for the diversion of the underground water that otherwise would have reached his spring and streams.

"In the other action the agreed statement of facts differs only in that it shows the existence upon plaintiff's farm of a well which for years had provided water for the various purposes of the plaintiff, and that, as a result of the defendant's operations, it had taken percolating underground water which otherwise would have reached this well, and had also taken percolating underground water from beneath the surface or soil of the plaintiff's land to such an extent that his crops will not now grow as they did formerly, and the taking of such percolating water has damaged the plaintiff's hay and crops, and also has reduced the level of the water in his well. For this diversion damages are sought."

The issues of law are then stated with such clearness and perspicuity that we are again tempted to quote the exact language of the court rather than attempt what might prove to be an imperfect abridgment:

"The judgments under review are based upon the theory that the city has an absolute right to appropriate all percolating water found beneath the land owned by it, and to use the water for purposes entirely unconnected with the beneficial use and enjoyment of that land, to the extent, indeed, of making merchandise of the water and conveying it to a distance for the supply of the inhabitants of East Orange, and that, although by such diversion the plaintiff's spring, well, and stream are dried up, and his land rendered so arid as to be untillable, it is *damnum absque injuria.* The judgments are attacked upon the ground that the law recognizes correlative rights in percolating subterranean waters; that each landowner is entitled to use such waters only in a reasonable manner and to a reasonable extent beneficial to his own land, and without undue interference with the rights of other landowners to the like use and enjoyment of waters percolating beneath their lands, or of water courses fed therefrom."

The distinguished Chancellor then refers to the cases of *Acton* v. *Blundell* and *Chasemore* v. *Richards,* supra, relied on by appellant in the instant case; also to Washburn on Easements, 363-390, Angel on Water Courses, §§ 109-114, and 30 Am. & Eng. Ency. L. (2d Ed.) 313, and assumes that

these authorities establish the rule upon which the judgments
under review were based. He next considers the New Hamp-
shire cases to which we have referred (*Bassett* v. *Salisbury
Mfg. Co.,* and *Swett* v. *Cutts,* supra) as promulgating the
doctrine of correlative rights based upon the maxim "*Sic
utere tuo,*" etc., since known as the doctrine of "reasonable
use." A somewhat elaborate review is made of earlier deci-
sions in New Jersey, Massachusetts, Connecticut, Maine, New
York, and English cases, all following the English rule. The
opinion then cites, as supporting the reasonable use rule,
*Smith* v. *City of Brooklyn,* 160 N. Y. 357, 54 N. E. 787, 45
L. R. A. 664; *Forebell* v. *New York City,* 164 N. Y. 522, 58
N. E. 644, 51 L. R. A. 695, 79 Am. St. Rep. 666; *City of Em-
poria* v. *Soden,* 25 Kan. 588, 37 Am. Rep. 265; *Katz* v. *Walk-
inshaw,* supra; *Cohen* v. *La Canada Land Co.,* supra; *Bar-
clay* v. *Abraham,* 121 Iowa, 619, 96 N. W. 1080, 64 L. R. A.
255, 100 Am. St. Rep. 365; *Pence* v. *Carney,* 58 W. Va. 296,
52 S. E. 702, 6 L. R. A. (N. S.) 266, 112 Am. St. Rep. 963,
6 Ann. Cas. 285; *Erickson* v. *Crookston W. W. Co.* (two ap-
peals) 100 Minn. 481, 111 N. W. 391, 9 L. R. A. (N. S.) 1250,
10 Ann. Cas. 843, and 105 Minn. 182, 117 N. W. 435, 17 L.
R. A. (N. S.) 650. This was an artesian basin case in which
the doctrine of reasonable use was maintained on both
appeals.

The Chancellor then proceeds to a consideration of the
reasons upon which the English doctrine respecting percolat-
ing underground waters rests. We quote from his argument
the following excerpt in which the inconsistency of the En-
glish rule and the reasonableness of the American rule are
set forth in a most convincing manner:

"The English rule seems to be rested at bottom upon the
maxim, '*Cujus est solum, ejus est usque ad cœlum et ad inferos.*'
Thus, in *Acton* v. *Blundell,* 12 Mees. & W. 354, Chief Justice Tindal
said that the case fell within 'that principle which gives to the
owner of the soil all that lies beneath his surface; that the land
immediately below is his property, whether it is solid rock, or
porous ground, or venous earth or part soil, part water; that the
person who owns the surface may dig therein, and apply all
that is there found to his own purposes at his free will and pleas-

ure.' Here the impracticability of applying the rule of absolute
ownership to the fluid, water, which by reason of its nature is
incapable of being subjected to such ownership, is apparently
overlooked. If the owner of Whiteacre is the absolute proprietor
of all the percolating water found beneath the soil, the owner of
the neighboring Blackacre must, by the same rule, have the like
proprietorship in his own percolating water. How, then, can it
be consistent with the declared principle to allow the owner of
Whiteacre to withdraw, by pumping or otherwise, not only all
of the percolating water that is normally subjacent to his own
soil, but also, and at the same time, the whole or a part of that
which is normally subjacent to Blackacre? Where percolating
water exists in a state of nature generally throughout a tract of
land, whose parcels are held in several ownership by different
proprietors, it is, in the nature of things, impossible to accord to
each of these proprietors the absolute right to withdraw ad libitum
all percolating water which may be reached by a well or pump
upon any one of the several lots, for such withdrawal by one owner
necessarily interferes to some extent with the enjoyment of the
like privilege and opportunity by the other owners."

The argument, which is a masterful review of the very
question we are called upon to determine, concludes as fol-
lows:

"Upon the whole we are convinced, not only that the author-
ity of the English cases is greatly weakened by the trend of mod-
ern decisions in this country, but that the reasoning upon which
the doctrine of 'reasonable user' rests is better supported upon
the general principles of law, and more in consonance with natural
justice and equity.

"We therefore adopt the latter doctrine. This does not pre-
vent the proper user by any landowner of the percolating waters
subjacent to his soil in agriculture, manufacturing, irrigation or
otherwise, nor does it prevent any reasonable development of his
land by mining or the like, although the underground water of
neighboring proprietors may thus be interfered with or diverted.
But it does prevent the withdrawal of underground waters for dis-
tribution or sale for uses not connected with any beneficial owner-
ship or enjoyment of the land whence they are taken, if it results
therefrom that the owner of adjacent or neighboring land is inter-
fered with in his right to the reasonable user of subsurface water
upon his land, or if, his wells, springs, or streams are thereby
materially diminished in flow, or his land is rendered so arid as
to be less valuable for agriculture, pasturage, or other legitimate
uses."

We claim justification for the extended review given to the

decision in the *Meeker Case* and the copious quotations made from the opinion of the court, for the reason that it emanates from high authority and is exceedingly pertinent to the issues presented in the instant case, which, it will be conceded, is one of more than ordinary importance in this jurisdiction.

To the same effect as the *Meeker Case,* respondents in the case at bar cite many others more or less in point in support of the doctrine of reasonable use. *Schenk* v. *City of Ann Arbor,* 196 Mich. 75, 163 N. W. 109, L. R. A. 1917F, 684, Ann. Cas. 1918E, 267; *Patrick* v. *Smith,* 75 Wash. 407, 134 Pac. 1076, 48 L. R. A. (N. S.) 740; *Ross C. W. Co.* v. *Blue Mtn. Con. W. Co.,* 228 Pa. 235, 77 Atl. 446; *Burt et al.* v. *Farmers' Co-op. Irr. Co.,* 30 Idaho, 752, 168 Pac. 1078; 30 Am. & Eng. Ency. L. at pages 314, 315, cited also in the opinion of Chancellor Pitney in the *Meeker Case,* and quoted from at considerable length. The matter quoted refers to water collected by means of artesian wells and conveyed away from the land for use elsewhere, as well as to other underground percolating waters.

See to the same effect 2 Wiel on Water Rights, heretofore cited, §§ 1090, 1118, 1124. 2 Kinney on Irr. §§ 1173, 1174, discusses the doctrine of correlative rights with special reference to artesian wells. This author is in line with the other authorities above referred to.

The consensus of opinion among the authorities seems to be that the doctrine of correlative rights or reasonable use of percolating water includes the idea that the water cannot be conveyed away, either for waste or use, from the land in which the water is found in its natural state. In that respect it is somewhat analogous to the doctrine of riparian rights. In *Cohen* v. *La Canada L. Co.,* supra, a California case subsequent to the *Walkinshaw Case,* it was held that percolating waters may be taken for use upon other land if it can be done without injury to adjoining owners. This seems to the court to be a just and equitable application of the doctrine of reasonable use. This question is perhaps of no practical importance in the case at bar, and it is only referred to here lest it might be inferred that we are committed to the prop-

osition that in no case can percolating water, as matter of right, be conveyed to alien lands. The question is reserved until it becomes necessary to determine it.

Before concluding the discussion as to whether the complaint in this case states a cause of action for equitable relief, the writer feels impressed to say he has no substantial doubt as to the justice and equity of the doctrine of reasonable use of percolating waters as between adjoining owners; but as to what constitutes a reasonable use the authorities are not as clear as might be desired. They seem to dwell mostly upon the point that it is not a reasonable use to convey the water away from the land in which it is found.

It seems to me that the use of the water by an adjoining owner, to be a reasonable use, especially in an artesian district, should be limited first to his just proportion according to his surface area, and, second, he should not be entitled even to this quantity to the injury of others similarly situated, unless it is reasonably necessary for the beneficial purposes to which he devotes the water.

In view of the contention usually made by those who insist that the doctrine of correlative rights is inconsistent with the maxim, *cujus est solum,*" etc., I am constrained to make the further observation that the doctrine of correlative rights, in my opinion, is far more consistent with the maxim referred to than is the doctrine that he who owns the soil not only owns the percolating water therein, but also can deprive an adjoining proprietor of a similar right by diverting the water from his land and successfully defend the wrong on the grounds that it is *damnum absque injuria.* Indeed, it seems to me that the doctrine of correlative rights or reasonable use is the nearest approach that can be made towards a literal application of the maxim, *"cujus est solum,"* etc., as far as underground percolating water is concerned.

The best-considered modern authorities seem to be overwhelmingly in favor of the doctrine of correlative rights in cases of this kind. For this reason, as well as upon a careful consideration of the equities of the case, the court is of the opinion that plaintiffs' complaint states a cause of action for

equitable relief, and that defendant's general demurrer thereto was properly overruled.

Defendant demurred to the complaint also upon the grounds that there is a defect and misjoinder of parties plaintiff, for the reason that their respective causes of action are several, and without privity of interest. The only question, except such as relates to technical procedure, submitted for our consideration is the one which we have discussed at considerable length in the preceding pages of this opinion, namely, Does the complaint state facts sufficient to entitle plaintiffs to equitable relief? As to that question the plaintiffs have a common interest, and their joinder in one action for the relief demanded is unexceptionable. Comp. Laws Utah 1917, § 6506.

Many of defendant's assignments of error relate to the order of the trial court denying defendant's motion for judgment on its alleged counterclaim served and filed August 18, 1920. We have frequently referred to this document as an "alleged counterclaim," and think we have acted with reasonable prudence in not regarding it as a counterclaim either in law or in fact. If plaintiffs, by their complaint, had sought to deprive defendant of its correlative right to a reasonable use of the water upon the land upon which its wells were sunk, and defendant had filed a counterclaim for such correlative right, it would have been the duty of the court to determine such right and quiet defendant's title thereto. But no such attempt was made by plaintiffs, nor was any such counterclaim made by defendant. The very nature of the case made by the pleadings, including the so-called counterclaim, was such on its face that defendant as matter of law was not entitled to the relief demanded. Under these circumstances its motion for judgment was entirely without merit. Whether the court refused to consider the document as being filed out of time, or struck it from the files for any other reason, or overruled defendant's motion for judgment thereon, was, in effect, one and the same thing. There being only a question of law involved, which question was clearly raised by de-

fendant's demurrer to the complaint, the plaintiffs were not required to either demur or reply to the document denominated a counterclaim, nor was the defendant in any manner prejudiced by the order of the court in respect thereto.

In this opinion we have given careful consideration to every substantial exception relied on by appellant. Upon all material questions urged by appellant in the argument of the case we have given expression to our views, whether or not the point raised was in our opinion meritorious. Our determination of the question raised by the demurrer and matters urged in respect to the so-called counterclaim practically disposes of all the assignments of error that are in any sense material.

Before concluding, in view of suggestions heretofore made, and as a precaution against possible misconstruction, we deem it prudent to state that this opinion should not be construed as depriving defendant of any correlative right it may have to a reasonable use of the water in question according to the views hereinbefore expressed.

Since writing the above, appellant, by leave of court, has filed an additional brief. Most of the questions discussed were anticipated and tentatively determined before the brief was filed. As, to such questions we find no reason to change our views.

Appellant insists that it has the right to change the use of its water from one purpose to another and from one place to another, and cites Sess. Laws, Utah 1919, c. 67, § 8, as authority therefor.

Assuming, without deciding, that the law referred to is applicable to the waters of an artesian basin existing in private lands, nevertheless, by the very terms of the statute cited by appellant, the matter falls within the jurisdiction of the State Engineer, and consequently has no place in this discussion.

In holding that each proprietor of land within an artesian district is entitled to water in proportion to his surface area, provided he makes beneficial use of it, we believe we are rest-

ing our decision upon a solid basis. Beyond that, as at present advised, we are not inclined to go.

This case is not in condition to adjust the correlative rights of each of the parties as to any specific quantity. The most that can be done is to lay down a rule by which the respective rights of the parties can be determined. This we have already done in accordance with our view of the law applicablt to this class of cases.

With the modification hereinbefore suggested, the judgment of the trial court is affirmed, at appellant's costs.

CORFMAN, C. J., and WEBER, GIDEON, and FRICK, JJ., concur.

On Petition for Rehearing.

THURMAN, J. On application for rehearing appellant requests specific findings upon certain matters which we supposed were fully covered by the opinion handed down. We might with propriety refer appellant to the opinion itself, and advise a more careful consideration of its meaning and effect. However, for the purpose of clarification, we submit the following:

The defendant appealed the case on the theory that a final judgment had been entered in the district court September 13, 1920, and respondents accepted the issues thus tendered without challenging the validity of the appeal. This court entered upon its investigation of the case upon the assumption that the appeal was regular, and finally reached the conclusion expressed in its opinion. In view of these facts there ought not to be any doubt as to whether or not the judgment appealed from was a final judgment as far as the decision of this court is concerned. The judgment of the trial court was for injunctive relief only, and that question only was involved in the appeal.

As regards appellant's right to plead a counterclaim in a suit for damages for trespass and for injunctive relief, we think the opinion is clear and explicit to the effect that defendant has such right; but, where the counterclaim does not

state facts sufficient to constitute a cause of action, as in the instant case, it should be disposed of as presenting only an issue of law. This court did not, and could not, under the pleading, assume to determine what would constitute a reasonable use of the water or the specific quantity to which any person was entitled. Those questions were left open for future determination, except that the court did express the opinion that, where the water is put to a beneficial use, each party in the artesian district, if the water is necessary for his use, is entitled to a proportionate share according to his surface area as compared with the whole. We know of no reason for modifying our views in that regard.

With this explanation, the application for rehearing is denied.

CORFMAN, C. J., and WEBER, GIDEON, and FRICK, JJ., concur.